**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 3 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

MICHAEL JEFFERY MORRIS,

      Defendant - Appellant.

Nos. 00-5041 and 00-5227

(N.D. Oklahoma)

(D.C. No. 92-CR-60-B)

---

**ORDER AND JUDGMENT** *

---

Before **HENRY** , **PORFILIO** , and **ANDERSON** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Defendant-Appellant Michael Jeffrey Morris appeals from two separate district court judgments revoking his supervised release. For clarity, we combine

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

those appeals for disposition, dismissing the first (Appeal No. 00-5041) and affirming on the second (Appeal No. 00-5227).

## BACKGROUND

Morris was convicted of using a false social security number to open a bank account, in violation of 42 U.S.C. § 408(a)(8). On January 4, 1993, he was sentenced to thirty months in prison followed by three years supervised release. Morris was initially released from prison in March 1995, and has since had a long and persistent history of violating the terms and conditions of his supervised release.

Morris' supervised release was first revoked in August 1997, whereupon he was sentenced to six months in prison followed by a new thirty month term of supervised release ("Aug. 1997 Judgment"). [1] Morris was released from prison in March 1998, but his supervised release was revoked again in August 1998. This time he was sentenced to six months in prison followed by a new eighteen month term of supervised release ("Aug. 1998 Judgment"). Morris served approximately one month in prison before he was released on bond pending an appeal of the Aug. 1998 Judgment. Although we affirmed the Aug. 1998 Judgment in March

---

[1]The conditions of Morris' supervised release were modified twice before this, on August 3, 1995, and November 25, 1996, respectively, based on two separate findings that Morris violated the release conditions.

1999, see United States v. Morris, No. 97-5188, 1999 WL 147244 (10th Cir. Mar. 18, 1999), the district court thereafter vacated the judgment, at Morris' request, purporting to reinstate the Aug. 1997 Judgment. As a result, Morris never completed the six month prison term and remained on release.

In December 1999, the district court revoked Morris' supervised release yet again, based on a state conviction for misdemeanor assault and battery. In the proceedings surrounding this revocation, Morris contended that the district court could not revoke his release and impose additional release time because the misdemeanor occurred in June 1999, while he was technically on bond status pending appeal. See Mot. for New Trial at 3, R. in Appeal No. 00-5041 ("R. 5041") Vol. I, Doc. 129. The district court rejected his contention, sentencing him to a new thirty month term of supervised release ("Dec. 1999 Judgment").

The Dec. 1999 Judgment contained a number of conditions restricting Morris' employment. Among other things, Morris was (1) prohibited from "engag[ing] in any form of self-employment," and from "work[ing] for or be[ing] employed in any way, assist[ing], or act[ing] as a consultant or broker (whether paid or not) for any business owned or operated by [his] wife or any immediate family member or relative, or for which [his] wife or any immediate family member or relative has any interest or control," December 8, 1999, J. and Order on Revocation of Supervised Release at 4, ¶ 9, R. 5041 Vol. I, Doc. 128,

(2) required to "maintain full-time employment with an established and verifiable business or concern under which [he is] assigned an immediate supervisor and for which [he is] compensated regularly by the issuance of a payroll check,"   id. at ¶ 10, (3) required to have "[a]ny employment offer . . . approved in advance by the probation officer,"   id., and (4) required to refrain from "engag[ing] in any employment activity with any person, business or enterprise without the knowledge and consent of the probation office."   Id. at 3, ¶ 2.  Although Morris asserted during the December 1999 proceedings that these employment restrictions were unreasonable and/or unconstitutional, the district court rejected his contention.   See Order at 2, R. 5041 Vol. I, Doc. 135.

Morris filed a notice of appeal from the Dec. 1999 Judgment on February 22, 2000 (Appeal No. 00-5041), reasserting his claims that the district court erred in revoking his release based on a bond violation, and that the employment restrictions were unreasonable and/or unconstitutional.

In November 2000, Morris' supervised release was revoked for a fourth and, to this point, final time.  In response to the government's petition for revocation, Morris filed a stipulation admitting that from March 2000 until October 2000 "he worked for the family business," and that he "failed to advise his probation officer of the fact that he was so employed," in violation of the December 1999 employment restrictions.  Appellant's Br. in Chief in Appeal No.

-4-

00-5227 ("Appellant's 5227 Br.") at 5; <u>see</u> <u>also</u> Morris Stipulation, Appellant's App. on Appeal From Order Revoking Appellant's Term of Supervised Release ("Appellant's App.") at 20. Morris further stipulated that he faked employment with "Mayes County Chrysler" in order to "dupe his probation officer into believing he was [in compliance] with the rules and conditions of his supervised release when he in fact was not." Appellant's 5227 Br. at 5-6; <u>see</u> <u>also</u> Morris Stipulation, Appellant's App. at 20. Based on these admissions, the district court revoked Morris' supervised release. November 6, 2000, J. and Order on Revocation of Supervised Release ("Nov. 2000 Judgment") at 1, Appellant's App. at 15. This time, Morris was sentenced to "fifteen months in the Bureau of Prisons, to be followed by yet another term of fifteen month[s] supervised release." Appellant's 5227 Br. at 5; <u>see</u> <u>also</u> Nov. 2000 Judgment at 2, Appellant's App. at 16.

On appeal from this latest judgment (Appeal No. 00-5227), Morris first challenges the validity of the Dec. 1999 Judgment underlying the November revocation. Specifically, he reasserts the contention raised in Appeal No. 00-5041 that the district court erroneously revoked his release in December 1999 based on a bond violation rather than a supervised release violation. He also reasserts his claim that the employment restrictions contained in the Dec. 1999 Judgment were

unreasonable and/or unconstitutional, arguing that they could not therefore serve as a basis for the November 2000 revocation.

Second, Morris contends that even if the Dec. 1999 Judgment is valid, the district court lacked the authority to impose any new sentence as a result of the November 2000 revocation. In this regard he asserts that he has already served all of the time available under his original charge of conviction, and cannot therefore be required to serve any more time, even upon the valid revocation of his supervised release.

## DISCUSSION

### *Appeal No. 00-5041*

Concluding that we lack jurisdiction, we dismiss Morris' appeal from the Dec. 1999 Judgment without reaching its merits. An appellate court acquires jurisdiction only upon the timely filing of a notice of appeal. See Smith v. Barry, 502 U.S. 244, 245 (1992); United States v. Robbins, 179 F.3d 1268, 1269 (10th Cir. 1999). "In a criminal case, a defendant's notice of appeal must be filed in the district court within 10 days after . . . the entry of . . . the judgment . . . being appealed." Fed. R. App. P. 4(b)(1)(A)(i). This requirement is mandatory, United States v. Robinson, 361 U.S. 220, 224 (1960); Hilliard v. United States, 345 F.2d 252, 256 (10th Cir. 1965), and we cannot excuse an appellant's failure to file a

timely notice. As discussed above, Morris did not file his notice of appeal until February 22, 2000, approximately seventy-six days after the district court's judgment was entered on December 8, 1999.  [2]  Accordingly, we lack jurisdiction over Morris' appeal, and it is therefore DISMISSED.

### *Appeal No. 00-5227*

### I.

Turning to Appeal No. 00-5227, we first dispose of Morris' contention that alleged defects in the Dec. 1999 Judgment invalidate the subsequent revocation in November 2000. We have already concluded in Appeal No. 00-5041,     supra , that

---

[2] We note that Morris filed a timely "motion for new trial" on December 13, 1999, see Mot. for New Trial, R. 5041 Vol. I, Doc. 129, and that in an appropriate case such a filing can toll the applicable period for the timely filing of a notice of appeal. See Fed. R. App. P. 4(b)(3)(A)(ii). We agree with the government, however, that a motion for a new trial under Fed. R. Crim. P. 33 is unavailable in revocation proceedings, and that Morris' improper filing of such a motion in this case did not sufficiently toll the filing period. See Appellee's Resp. Br. in Appeal No. 00-5041 at 1-3 (quoting United States v. Yancey, 100 F. Supp. 2d 378, 380 (W.D. Va. 2000) ("A revocation hearing is, by its terms, a post-trial event and cannot be considered an adjudication of rights that would support a new trial pursuant to Rule 33")) (further citations omitted). We find it compelling that Morris neither responded to the government's argument, nor asserted in his opening brief that his motion for new trial tolled the filing period. See Perry v. Woodward, 199 F.3d 1126, 1141 n. 13 (10th Cir. 1999) (noting that this court "will not craft a party's arguments for him"); State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n. 7 (10th Cir. 1994) (holding that an issue not sufficiently raised in the opening brief is waived); Phillips v. Calhoun, 956 F.2d 949, 953 (10th Cir. 1992) (recognizing that a party must support its argument with adequate legal authority).

Morris failed to timely appeal from the Dec. 1999 Judgment, and that his claims of error in those proceedings were procedurally barred. Accordingly, the validity of the Dec. 1999 Judgment has been conclusively established for the purposes of this case, and we are precluded by law of the case principles from revisiting his claims otherwise in this subsequent appeal. *See* United States v. Gama-Bastidas, 222 F.3d 779, 784 (10th Cir. 2000) (noting that we will ordinarily "not review in a second direct appeal an issue that underlies a previously affirmed [judgment]" because "findings made at one point during litigation become law of the case for subsequent stages of that same litigation"); United States v. Contreras, 180 F.3d 1204, 1209-10 (10th Cir. 1999) (holding that prior panel's determination that defendant was not entitled to downward departure was "rule of th[e] case" that could not be revisited in subsequent direct appeal); United States v. Mendes, 912 F.2d 434, 438 (10th Cir. 1990) (holding that when defendant withdrew prior notice of appeal, he abandoned issues concerning the validity of his conviction raised by that appeal, and that he was therefore "foreclosed from attacking his conviction in his later appeal from the district court's" resentencing order). In sum, regardless of whether we believe that there were errors surrounding the Dec. 1999 Judgment, we conclude that Morris' claims relating to the validity of that judgment are procedurally barred.

## II.

We turn now to Morris' last remaining claim, that the district court lacked the authority to impose any new sentence in November 2000 because he had already served all of the time available for his substantive offense. His argument is premised on the supposition that a defendant convicted under 42 U.S.C. § 408(a)(8) can be sentenced to no more than five years in prison, id. § 408(a), and no more than three years supervised release, 18 U.S.C. §§ 3559 & 3583(b)(2), for a total statutory maximum sentence of eight years. He asserts that because he has been in prison or on supervised release continually since January 4, 1993, his maximum term of eight years expired on January 3, 2001, and that the district court was therefore precluded from imposing any additional sentences of imprisonment or supervised release. [3] We disagree.

To begin with, we reject Morris' assertion that we must combine the five year statutory maximum prison term with the three year maximum supervised release term for purposes of our analysis. He provides no authority to support his contention that these periods must be aggregated for an overall statutory maximum of eight-years, and we conclude otherwise. Accordingly we proceed to analyze first whether the new 15-month term of imprisonment violates the five

---

[3]Under the Nov. 2000 Judgment, Morris' sentence began on January 4, 2001.

-9-

year statutory maximum allowed under 42 U.S.C. § 408(a), and then whether the new 15-month term of supervised release violated the three year maximum under 18 U.S.C. § 3583(b)(2).

Morris' claim regarding the new prison term is easily rejected. Upon the completion of his new 15-month sentence Morris will have served a total of only 51 months in prison, nine months less than the 60-month maximum. Accordingly, even if we assume that the district court was constrained by the statutory maximum (which it was not, see United States v. Robinson, 62 F.3d 1282, 1285 (10th Cir. 1995)), there was no error.

We similarly reject Morris' contention that the district court lacked the authority to sentence him to any additional terms of supervised release since he has already served five years on supervised release, two years more than the maximum prescribed for the underlying conviction. For the reasons articulated below, we hold that the district court had the authority, pursuant to the 1993 version of 18 U.S.C. § 3583, [4] to impose additional terms of supervised release.

To begin with, we are persuaded by the Supreme Court's conclusion in Johnson that Congress intended not only to grant district courts the power to impose additional periods of supervised release after revocation, but that such

---

[4]We are required to apply the version of the statute in effect in 1993 because that is when Morris was originally sentenced. See Johnson v. United States, 529 U.S. 694, 702 (2000).

-10-

power was intended to be broad in order to fully effectuate the purposes of supervised release. 529 U.S. at 709, 713. We rely further on our own analogous case law holding that section "'3583 authorizes the revocation of supervised release even where the resulting incarceration, when combined with the period of time the defendant has already served for his substantive offense, will exceed the maximum incarceration permissible under the substantive statute.'" Robinson , 62 F.3d at 1285 (quoting United States v. Purvis , 940 F.2d 1276, 1279 (9th Cir. 1991) (footnote omitted)). See also United States v. Mandarelli , 982 F.2d 11, 11 (1st Cir. 1992) (holding that the length incarceration under section 3583 is not limited by the maximum guideline range applicable to the original sentence); United States v. Smeathers , 930 F.2d 18, 19 (8th Cir. 1991) (same). [5]

Our conclusion is further buttressed by the fact that the current version of section 3583, as amended in 1994, explicitly allows a district court to impose additional terms of supervised release after revocation so long as each new term does not "exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." 18 U.S.C.

_____

[5]Cf. United States v. Wright, 2 F.3d 175, 179 (6th Cir. 1993) (noting that 18 U.S.C. § 3583, rather than the substantive statute of conviction, authorizes "imposition of a term of supervised release in addition to the maximum term of imprisonment provided for in prohibiting the underlying offense").

§ 3583(h).  The Ninth Circuit interpreted this provision in United States v. Cade,

236 F.3d 463 (9th Cir. 2000), holding that the statute

> neither limits the *number of terms* of supervised release that a
> defendant can be ordered to serve as a result of violating conditions
> of release, nor places a cap on the *aggregate amount of time* on
> supervised release that a defendant might serve because of repeated
> violations of conditions of release.

Id. at 466.  As recognized by the Supreme Court in Johnson, the 1994

amendments to section 3583 merely clarified Congress' original intent.  524 U.S.

at 713.

Morris' response to our analysis is twofold.  First, he asserts that our

conclusion is contrary to the express holding in Johnson that "postrevocation

penalties" are "attribute[d] . . . to the original conviction."  524 U.S. at 701.

Second, he asserts that his plight may be never-ending:

> The bottom line is simply this–when does it all come to an end?  The
> Government seems to believe that its supervision of a defendant can
> proceed almost eternally, with periods of incarceration followed by
> additional terms of supervised release.  Once Morris is released from
> prison, it is the Government's intention to place him under
> supervised release, once again, for another fifteen months.  If he is
> found to violate the terms of that supervised release, Morris' period
> of supervised release could be extended [yet again].  This could
> continue again and again without this Court's intervention.  **Forever**.

Appellant's 5227 Br. at 17.  We reject both contentions.

First, while postconviction penalties are considered part of the punishment

for the original crime, they are imposed not because of the original violation of

-12-

the law but because the defendant has violated an express order of release, thereby committing a new offense which is punishable by new restrictions.        See U.S.S.G. Ch. 7, Pt. A, intro. comment at ¶ 3(b) (adopting theory that defendant's violation of release conditions constitutes a "breach of trust" against the court, and stating that "the sentence imposed upon revocation would be intended to sanction the violator for failing to abide by the conditions of the court-ordered supervision").  Postrevocation punishments are not merely a reinstatement of the original sentence,   see Johnson , 524 U.S. at 712 (noting that "[t]he proceeding that follows a violation of the conditions of supervised release is not, to be sure, a precise reenactment of the initial sentencing"), but are more akin to punishments imposed when an individual is found in contempt for violating an express court order.  Accordingly, the post-revocation punishments are controlled by their own rules, and not by the statute of conviction as Morris asserts.

Second, we reject any implication that Morris' potentially never-ending plight of release, revocation and re-sentencing is the result of some unfairness in the system or misapplication of the law.  This continuing cycle is entirely the result of Morris' own inability to control his behavior and adequately comply with the requirements of his release.   [6]  So long as Morris continues to violate the

_____

[6]Indeed, Morris has approximately one year left on his current term of supervised release.  If he is able to finally comply with the release conditions for
(continued...)

-13-

conditions of his release, the district court will have the continued authority, consistent with section 3583, to impose new sentences of incarceration and/or supervised release.

Based on the foregoing, the Nov. 2000 Judgment is AFFIRMED.

## CONCLUSION

For the reasons articulated herein, Appeal No. 00-5041 is DISMISSED and the Nov. 2000 Judgment is AFFIRMED.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

---

[6](...continued)
the remainder of that term, this entire discussion will become moot.

-14-