**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 19, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICHAEL JEFFREY MORRIS,

Defendant - Appellant.

No. 08-5016
(N.D. Okla.)
(D.Ct. No. 4:02-CR-00072-JHP-1)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **O'BRIEN**, **EBEL**, and **GORSUCH**, Circuit Judges.

_____

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1. The case is therefore ordered submitted without oral argument.

Michael Jeffrey Morris appeals from the district court's imposition of a prison sentence for violating the terms of his supervised release. His counsel

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

filed an *Anders* brief and moved to withdraw. *Anders v. California*, 386 U.S. 738 (1967). In response Morris filed his own statement of alleged issues. The government has not filed a brief. We DISMISS Morris' appeal and GRANT his attorney's motion to withdraw.

## I. PROCEDURAL BACKGROUND

A. <u>Original Convictions</u>

In October 2002, pursuant to a plea agreement, Morris pled guilty to bank fraud (Count One) and wire fraud (Count Two). In spite of his agreement not to, Morris appealed from the resulting sentence. We enforced his plea agreement and dismissed his appeal. *United States v. Morris*, 92 Fed. Appx. 706 (10th Cir. 2004) (unpublished). He received concurrent sentences of 63 months incarceration for bank fraud followed by five years of supervised release and 60 months for wire fraud followed by three years of supervised release, the sentences to run concurrently. Restitution was set at $1,681,199.19, "an amount specifically recognized in the plea agreement as permissible." *Id.* at 707.

Morris' supervised release commenced on December 22, 2006. The statutorily required terms of supervised release prohibited Morris from committing any crime and required him to submit truthful monthly reports to his supervised release officer. *See* 18 U.S.C. § 3583(d). In addition, the court imposed special conditions prohibiting Morris from engaging in certain

employment and financial activities without the prior approval of his probation officer. Morris was to secure advance approval for employment involving the processing of credit applications or the solicitation of investors or lenders, or employment in which he would have access to "money, bank or investment accounts, real or personal property or inventory of any person or business entity." (R. Appx. Vol. 2.) Prior approval was also necessary for Morris to open or have signature authority over any checking, savings, or credit accounts.[1]

Morris' supervised release terms required him to submit a written monthly report within the first five days of the month following the reportable activities. Each report form contained the following acknowledgment immediately below the signature line:

> I swear or affirm this report is complete and correct, understanding that any false statements may lead to revocation or prosecution resulting in additional imprisonment for a term of up to 5 years, a fine of up to $250,000 or both.

(R. Appx. Vol. 2 at 10, 12.) In his September 2007 report, Morris falsely

---

[1] Morris has several previous convictions for financial crimes. *See United States v. Morris*, 13 F.3d 407 *1 (10th Cir. 1993) (unpublished) (Morris pled "to the crime of fraudulently using a Social Security number, 42 U.S.C. § 408(a)(7)(B), and sentenced to confinement for thirty months, supervised release for three years, and ordered to pay restitution of $6,741 . . . . At the time of sentencing, Mr. Morris had already accumulated two prior convictions he claims are related for the purpose of sentencing. The first offense, committed in the State of Georgia, was a bank fraud in which he used a false name to open a line of credit. The second offense, use of a false Social Security number to open a bank account in Oklahoma, was committed later.").

stated he owned or drove two cars when he had, in fact, purchased two new (additional) cars on credit that month. He did not report these expenditures or the new lines of credit. In his October 2007 report, Morris neglected to inform the government he had applied for and received a certificate for a limited liability company in his name and had received credit lines for his nascent business. On both months' forms, Morris handwrote "to the best of my knowledge" after the phrase "I swear or affirm this report is complete and correct." (*Id.*)

Based on Morris' actions, false statements and material omissions, the government petitioned the court for an order requiring him to show cause why his supervised release should not be revoked or modified. It alleged Morris had not only violated the special terms of his supervised release, but also the general terms through his felony submission of false statements to a government agency. *See* 18 U.S.C. § 1001.

B. Revocation Hearing

1. *Violation of Supervised Release*

A revocation hearing was held on January 20, 2008. Morris appeared with retained counsel. After Morris' counsel stated Morris was willing "to stipulate to each and every allegation in the order on supervised release," the district judge spoke directly with Morris. (R. Supp. Appx. at 3.) The

judge asked if he understood he had the right to a hearing in which he could question adverse witnesses and present evidence in his defense. Morris said he understood. The judge also asked Morris if he understood the provisions of 18 U.S.C. § 3583(e)(3) authorized imprisonment for violations of his supervised release for up to 36 months as to Count 1 of his original (bank fraud) offense and up to 24 months for Count Two of the original (wire fraud) offense.[2] Morris affirmed he understood. To be sure, the court asked Morris if he understood he "could be imprisoned up to five years." (*Id.* at 6.) Morris said yes and, through counsel, waived his right to an evidentiary hearing on the charges. *See United States v. Fay*, 547 F.3d 1231, 1234 (10th Cir. 2008) ("A full revocation hearing is not necessary where the defendant admits he has violated the terms of his supervised release."). The court found Morris had violated the terms of his supervised release by submitting reports containing falsehoods and omissions as well as violating his special financial conditions on numerous occasions.

*2. Evidence in Mitigation*

Morris, the only witness, testified in mitigation. He conceded he bought two new cars, but stated one was bought for his estranged wife and

---

[2] The presentence report mistakenly categorized Morris' wire fraud conviction as a Class C felony. *See* 18 U.S.C. § 3559; *see also infra* note 4. There was no objection to the presentence report.

the other for his son who was "just getting ready to turn 16."[3] (*Id.* at 10.) Morris stated "there's no real excuse" but immediately added, "I was acting on emotions and I was – embarrassingly, I guess I was just – I was trying to win my wife back and my son." (*Id.* at 11.) Morris justified establishing his limited liability company with two reasons. First, he was hoping to become a "solutions provider" for his current employer and he needed the company to "meet certain qualifications." (*Id.* at 12.) In addition, he wanted to help his ailing mother who was having difficulty paying her mortgage. According to Morris "another attorney" advised him it would help him negotiate with his mother's mortgagor to "purchase the mortgage for a lesser amount." *(Id.)* Morris admitted he opened two savings accounts and one checking account at banks in Georgia and California, but stated he opened one savings account merely to get a discount on his insurance and he had not used the checking account. While he did open between six and eight credit card accounts, at least one of which was in the new company's name, he explained one reason for his actions was "to try to repair [his wife's] credit." (*Id.* at 13.) When asked on cross-examination whether he had made any false statements when applying for credit or bank accounts, Morris answered, "I don't recall." (*Id.* at 31-32.)

---

[3] On cross-examination, Morris admitted he bought the truck eight months before his son's sixteenth birthday.

Morris discussed his mental illness, bipolar disorder, and claimed he was now taking his prescribed medications. He admitted, however, when he was released from prison he was given a "60 day supply of medication" but had not taken it. (*Id.* at 34.) His reason was "[he] didn't think [he] needed it" and "it makes [him] feel like [he's] lesser of a person." (*Id.* at 17.)

Morris acknowledged his earlier convictions for fraudulent transactions. He conceded his fraud convictions in this case, wherein he swindled two banks out of over $1 million, were committed while he was on supervised release. This was his seventh supervised release revocation.

*3. Sentence of Imprisonment*

A term of imprisonment upon revocation of supervised release is based on the crime for which the defendant was originally convicted.[4] *See* 18 U.S.C. § 3583(e)(3). The classification of the offense caps the term of imprisonment:

> The court may, after considering the factors set forth in section 3553(a)
>
> . . . .

---

[4] The maximum sentence for bank fraud is thirty years. *See,* 18 U.S.C. § 1344(1). The maximum sentence for wire fraud is also thirty years. *See* 18 U.S.C. § 1343. Each crime is a class B Felony. *See* 18 U.S.C. § 3559 ("[I]f the maximum term of imprisonment authorized is . . . twenty-five years or more, [it is] a Class B felony.").

-7-

(3) revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court . . . finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense is a class C or D felony, or more than one year in any other case . . . .

*Id*. The court found Morris had violated the terms of supervised release as to both his Class B felony convictions.

The policy statements contained in Chapter 7 of the United States Sentencing Guidelines make recommendations as to punishment for violations of conditional release. Those policy statements are based on the seriousness of the violations of supervised release conditions rather than the seriousness of the original conviction, which dictates the maximum punishment. Under the 2007 guidelines used in this case, Morris' violations consisted of both Grade B and Grade C violations.[5] *See* USSG §7B1.1(a). "Where there is more than one

---

[5] A Grade B violation is "conduct constituting [a] federal, state, or local offense punishable by a term of imprisonment for more than one year" and a Grade C violation includes conduct constituting "a violation of any other condition of supervision." *See* USSG §7B1.1 (a)(2)&(3)(B). The "Grades" used by the guidelines should not be confused with the "Class" of felony set by 18 U.S.C. § 3559, which relates to the original offence.

violation of the conditions of supervision, the grade of the violation is determined by the violation having the most serious grade." USSG §7B1.1(b). As reported in the presentence report, the guideline policy statements recommended range of 21-27 months imprisonment for the violations of Morris' bank fraud supervised release and 21-24 months for the violations of his supervised release for wire fraud.[6] *See* USSG §7B1.1- 1.5. *See* 18 U.S.C. § 3583(e)(3). Morris does not dispute the guideline calculations.

The court revoked Morris' supervised release and sentenced him to the maximum 36-month term of imprisonment for violating the supervised release terms on his bank fraud conviction and a 24-month term of imprisonment for the violations related to his wire fraud conviction; the sentences run consecutively. Assessing condign punishment for Morris' most recent transgressions, the court stated:

> The Court has considered the violation policy statements in Chapter 7 of the United States Sentencing Guideline manual now in effect and views these policies as advisory in nature for the purpose of these proceedings. The Court has also considered the factors set out in 18 U.S.C. Section 3553(a) to include the nature and circumstances of the violation conduct and the history and characteristics of the offender. Michael Jeffrey Morris has shown little regard for the rules and conditions of supervised release as indicated by these violations. The Court notes that this is Morris' seventh revocation proceeding over three separate periods of supervised release. These

---

[6] Morris' Criminal History Category at the time he was sentenced on the original charges was VI. This is the Criminal History Category applicable for determining the imprisonment range upon revocation of supervised release. *See* USSG §7B1.4(a).

current violations represent the latest in a long series of similar violations that indicate a pattern of refusing to submit to the rules and conditions of supervised release. The Court further takes notice of the serious nature of the violations, including the submissions of materially false monthly supervision reports which constitute violations of 18 U.S.C. Section 1001. Based on the need to protect the public, provide incremental increases in the punishment, provide some deterrence to the defendant, and the nature, history, and pattern of violations, the Court believes that a lengthy term of imprisonment is not only justified, but necessary.

(Supp. Appx. at 46-47.)

After his revocation sentencing, Morris fired his retained counsel and requested new counsel be appointed to take an appeal on his behalf, but filed a deficient request to proceed on appeal *in forma pauperis* (IFP) in the district court. The district court denied his request as premature and required his attorney to file and perfect an appeal as required by 10th Cir. R. 46.3(A). The judge explained that Morris could file an IFP petition with this Court.[7]

C. Appeal

As required, Morris' attorney filed and perfected the appeal[8] and also filed an *Anders* brief asserting no non-frivolous issues were present in the case and seeking leave to withdraw. *See Anders v. California*, 386 U.S. 738, 744 (1967).

---

[7] In denying the IFP motion the district judge correctly said: "The Tenth Circuit prefers to handle issues relating to appointment of counsel for purposes of appeal." Order Denying Appointment of Counsel, Sept. 9, 2008 (citing 10th Cir. R. Addendum I, Section I).

[8] The $455.00 docketing fee was paid on July 17, 2008.

-10-

Morris filed his own brief in the form of a letter detailing errors allegedly committed by the district court and claiming his retained counsel was ineffective in the district court and again on appeal.

On November 4, 2008, Morris requested this Court appoint counsel. We denied his request on November 7, 2008. We ordered Morris, inter alia, to "cure the deficiencies in the motion to proceed *in forma pauperis* that he previously filed in the district court <u>and</u> obtain a finding from the district court that he is eligible [for appointment of counsel]." (emphasis in original). On January 16, 2009, Morris filed a supplemental "Motion to Strike Anders Brief" claiming his counsel does not represent him and essentially again requesting appointed counsel for this appeal. Morris has neither explained why he has not employed new counsel nor filed a proper IFP request as we ordered in November. *See* Fed. R. App. P. Rule 24. His supplemental motion is denied.

## II. DISCUSSION

A. <u>Recusal</u>

Morris asserts he "has made repeated filings . . . to the court that [the judge] and all members of the U.S. Attorney's Office for the Northern District of Oklahoma should have been recused from the case." (Appellant's *Anders* Statement at 3.) Morris alleges Judge Payne, the judge at his revocation hearing, was recused in the civil matter associated with Morris' original criminal

convictions (*Key Bank N.A. v. Mid-Continent Trans.*, No. 00-CV206 (N.D. Okla. 2000))[9] and, therefore, should have recused himself in the criminal case as well. Similarly, he claims because the United States District Attorney for the Northern District of Oklahoma, David E. O'Meilia, represented Key Bank in that civil matter (while he was in private practice), this entire United States Attorney's Office should have been disqualified in this criminal proceeding. Assuming these claims are not foreclosed by rulings in Morris' previous cases, they are without merit.

The complaint in the civil case was filed on March 9, 2000. O'Meilia represented the Key Bank at that time. On October 5, 2001, O'Meilia moved to withdraw as counsel because he was leaving private practice to serve as the United States Attorney for the Northern District of Oklahoma. His motion was granted. On November 7, 2001, the case was reassigned to Judge Payne. On November 19, 2001, the case was again randomly reassigned because Judge Payne recused due to "[l]aw firm conflict." (*Key Bank*, 00-CV-206 Dock. # 1564.)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." "[D]isqualification is appropriate only where a reasonable person, were he to know all the circumstances, would harbor doubts about the judge's impartiality."

---

[9] "We may take judicial notice of these documents from the public record." *State Farm Mut. Auto. Ins. Co. v. Boellstorf*, 540 F.3d 1223, 1226 n.7 (10th Cir. 2008).

*United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006) (quotations omitted). We review the district court's decision for abuse of discretion. *Id.* Morris does not explain why the judge's recusal in the civil case requires the same result in his criminal case. There were no less than six law firms involved in the civil case and several individual attorneys. Morris does not attempt to demonstrate why a conflict with one of these firms would affect Judge Payne's impartiality in Morris' revocation of supervised release. After an independent and thorough review of this record, we harbor no doubts about the judge's impartiality.

"The disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except where necessary." *United States v. Bolden*, 353 F.3d 870, 878 (10th Cir. 2003) (quotations omitted). "Courts have allowed disqualification of government counsel in limited circumstances" but a moving party must show a real conflict such as the *prosecutor's* prior representation of an adverse party. *Id.* at 878-89 (listing cases). In addition, "disqualifying government attorneys implicates separation of powers issues." *Id.* at 879. Therefore, "the generally accepted remedy is to disqualify a specific Assistant United States Attorney, not all the attorneys in the office." *Id.* O'Meilia did not prosecute Morris' original criminal case or this revocation proceeding. In this matter, the United States was represented by two different

-13-

individuals from that office.  Morris does not allege these attorneys had even a remote connection with his civil case or with the bank.  The judge did not abuse his discretion in denying Morris' motion for recusal of the entire Northern District of Oklahoma's United States Attorney's office. [10]

There is no support for Morris' argument.  It is frivolous.

B.  Sentencing

Morris agrees he violated his supervised release terms and should be punished but claims his sentence is unreasonable because the district court (1) considered a technical violation as the equivalent of new criminal activity, (2) failed to consider (a) his positive activities while on supervised release, (b) the age of his former convictions, and (c) his mental health and imposed consecutive, rather than concurrent sentences.  None of his claims have merit.

> Reasonableness review is a two-step process comprising a procedural and a substantive component.  Procedural review asks whether the sentencing court committed any error in calculating or explaining the sentence.  Substantive review involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in 18 U.S.C. § 3553(a).

*United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1214-15 (10th Cir. 2008)

---

[10]  Morris also claims the prosecutor engaged in selective prosecution.  "[A] person making a selective-prosecution claim must establish two elements: [1] the federal prosecutorial policy had a discriminatory effect and [2] it was motivated by a discriminatory purpose."  *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1263-64 (10th Cir. 2006) (quotations omitted).  Morris does not allege either of these elements.

-14-

(quotations and citations omitted). Morris claims several procedural errors and challenges the substantive reasonableness of his revocation sentence.

*1. Procedural Review*

Morris made no objection to the presentence report nor did he present his arguments to the district court. Thus, he must show plain error to prevail on appeal. *See id.* at 1222 (we review only for plain error when the defendant failed to make the procedural challenge below). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (quotations and citations omitted). There was no error.

a. Technical Violation

Morris claims he committed only a technical violation and, therefore, could not be sentenced for new criminal activity for false reporting. He argues his monthly reports did not contain false statements, merely omissions which he rectified by writing "to the best of my knowledge" in the signature section on his report – just above the advisement that false reports are a criminal violation.[11] (Appellant's *Anders* statement at 2.)

---

[11] Morris' argument is telling. It illustrates his proclivity to posit specious distinction in order to justify falsehoods. Apparently he thinks this transparent artifice will excuse or minimize his lies. However, as § 1001(a) expressly recognizes, "a trick" will not avoid guilt. Contrary to his expectations, his tactics provide insight into "the history and characteristics of the defendant." *See* 18 U.S.C. 3553(a)(1).

-15-

The several allegations to which Morris admitted included a violation of 18 U.S.C. § 1001(a). This section provides up to five years imprisonment if a person within the jurisdiction of the judicial branch "knowingly and willfully[:] (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry . . . ." *Id.* A court may revoke a defendant's supervised release if it finds by a preponderance of the evidence that the defendant violated a condition of supervised release. *See* 18 U.S.C. § 3583(e)(3).

Morris has extensive experience with the terms of his supervised release.[12] He was repeatedly put on notice that his reports must be correct and complete. His supervised release has been revoked for the same kinds of transgressions in the past. *See United States v. Morris*, 42 Fed. Appx. 285 *1 (10th Cir. 2002) (unpublished). Creating a limited liability company and starting numerous lines of credit were not "technical" violations unintentionally omitted from his report.

---

[12] Morris was acutely aware of the terms of his supervised release as these terms had been in effect and increasingly expanded and particularized when he violated the terms and appealed from further restrictions. *See United States v. Morris*, 173 F.3d 865 *1 (10th Cir. 1999) (unpublished) (Morris appealed from the district court's imposition of a special condition of supervised release prohibiting him from acting as a mortgage broker and limiting his involvement in the financing of automobile sales.)

The report form carried a monthly reminder that submitting a false statement was a felony. His convenient and contrived qualification — "to the best of my knowledge" — is embarrassingly transparent. (R. Appx. Vol. 2 at 10, 12.) It neither excuses nor mitigates his flagrantly false report. The argument is frivolous.

### b. Consideration of § 3553(a) Factors

Morris further contends the district court failed to consider his productive activities during supervised release, the age of his convictions and his mental health.[13] In *Gall v. United States*, the Supreme Court clarified our procedural review includes allegations the court "fail[ed] to consider the § 3553(a) factors." — U.S. —, 128 S.Ct. 586, 597 (2007). Contrary to Morris' assertions, however, the court expressly stated it had considered the§ 3553(a) factors and it clearly explained the reasons for a maximum sentence. The judge was fully aware of the dates of Morris' convictions, his past revocations, and his deliberate failure to take his prescribed and provided mental health medication. The judge was also treated to first-hand evidence of Morris' persistent antisocial tendencies. His conniving, manipulative and narcissistic behaviors continue unabated, an obvious risk to public safety. The record contains no evidence of community service

---

[13] At an earlier revocation hearing, a "a psychologist opined . . . that Morris may suffer from a mental condition which causes compulsive criminal behavior in the area of illegally using others social security numbers and credit histories." *Morris*, 173 F.3d at *2.

activities while on supervised release.

"We do not . . . require that the district court recite any magic words to show us that it fulfilled its responsibility to be mindful of the factors [in § 3553(a).]" *United States v. Chavez-Calderon*, 494 F.3d 1266, 1268 (10th Cir. 2007) (quotations omitted), *cert. denied*, 129 S.Ct. 185 (2008). As quoted in the procedural background above, the court adequately explained its determination to sentence Morris as it did, including his pattern of disregarding the conditions placed on his numerous supervised releases. While the judge was brief, as befitted the circumstances, there is no evidence he failed to properly weigh the factors in § 3553(a) or appropriately state the reasons for the sentence imposed. In any event, the reasons for the maximum sentence are self evident from a record review. Morris' argument is frivolous.

c. Consecutive Sentences

Morris claims the court could not impose two consecutive sentences because he was originally sentenced to two concurrent terms of supervised release. If the sentences were to run concurrently, the maximum statutory sentence would be 36 months. Morris maintains a consecutive sentence at this point effectively produces a retroactive modification of his original sentence in violation of the legislative intent and unfairly gives him a five year term of imprisonment, nearly equal to his original sentence.

While our precedent has not specifically addressed Morris' contentions, we have consistently assumed his position is untenable. In *United States v. Rose*, Rose pled guilty in 1991 to a single count of interstate travel in aid of racketeering. The Oklahoma federal district court sentenced him to a 60-month term of incarceration to be followed by three years of supervised release. 185 F.3d 1108, 1110 (10th Cir. 1999). The next year, Rose pled guilty in a North Carolina federal district court to a single count of conspiracy to possess with the intent to distribute marijuana. He was sentenced to a 33-month term of incarceration and a five year term of supervised release to be served concurrently with the sentence imposed in the Oklahoma case. *Id.* Rose violated the terms of his supervised release. "[T]he district court revoked both terms of supervised release, sentenced Rose to a term of imprisonment of twenty-four months in each case, and ordered that the terms of imprisonment be served consecutively." *Id.*

Rose appealed, claiming "the district court failed to comply with 18 U.S.C. § 3584[14] in ordering his terms of incarceration to run consecutively" because it

---

[14] 18 U.S.C. § 3584 states in relevant part:
Imposition of concurrent or consecutive terms.--If multiple terms of imprisonment are imposed on a defendant at the same time, or if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively, except that the terms may not run consecutively for an attempt and for another offense that was the sole objective of the attempt. Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively . . . .

did not adequately explain the § 3553(a) factors on which it based Rose's sentence. As a prelude to our discussion of the § 3553 issue, we stated, "Section 3584 grants district courts discretion in choosing between consecutive and concurrent terms of imprisonment" and proceeded to affirm Rose's sentence. *Id.*; s*ee also United States v. Cordova*, 461 F.3d 1184, 1185-86 (10th Cir. 2006) (affirming district court's sentence on revocation of supervised release to the statutory maximums – 24 months as to the first conviction and 12 months as to the second conviction ordered to run consecutively); *United States v. Davis*, 218 Fed. Appx. 786, 788 n.1 (10th Cir. 2007) (unpublished) ("Multiple custody terms imposed after revocation of supervised release may run concurrently or consecutively."); *United States v. Meadows*, 214 Fed. Appx. 872, 873 n.1 (10th Cir. 2007) (unpublished) (defendant convicted of two counts for a class E felony could be sentenced to two consecutive terms of one year for violation of a condition of supervised release).[15]

While our pronouncements admittedly may be dicta, at least seven other circuits confronting the exact issue have held the district court may impose consecutive sentences on revocation of concurrent sentences of supervised release. *See United States v. Dees*, 467 F.3d 847, 851-52 (3d Cir. 2006); *United*

---

[15] Unpublished opinions are not binding precedent. 10th Cir. R. 32.1(A). We mention these as we would an opinion from another circuit, persuasive because of their reasoned analysis.

-20-

*States v. Deutsch*, 403 F.3d 915, 917-18 (7th Cir. 2005); *United States v. Gonzalez*, 250 F.3d 923, 926-29 (5th Cir. 2001); *United States v. Jackson*, 176 F.3d 1175, 1176-79 (9th Cir. 1999); *United States v. Johnson*, 138 F.3d 115, 118-19 (4th Cir. 1998); *United States v. Quinones*, 136 F.3d 1293, 1294-95 (11th Cir. 1998); *United States v. Cotroneo*, 89 F.3d 510, 512-13 (8th Cir. 1996). Morris has provided no contrary authority and we find none.

In *United States v. Dees*, the Third Circuit considered a case nearly identical to Morris'. 467 F.3d 847 (3d Cir. 2006). There, the defendant was sentenced for three crimes simultaneously – 51 months in prison and 36 months of supervised release for each conviction, with the sentences to run concurrently. *Id.* at 850. At his hearing for violation of the terms of his supervised release, the district court found Dees committed both technical and non-technical Grade B violations. *Id.* After briefing by the parties on the issue of whether the district court had statutory discretion to impose consecutive sentences for violations of supervised release, even though Dees' initial punishments for the underlying crimes ran concurrently, the district court concluded it did. Accordingly, Dees was sentenced to three consecutive 24 month prison terms. *Id.*

On appeal, the Third Circuit affirmed the sentence, explaining:

18 U.S.C. § 3584(a) controls and permits a district court to impose consecutive terms of imprisonment upon revocation of supervised release-even when the sentences for the underlying crimes ran

concurrently. No fewer than six other circuits have agreed with the proposition that § 3584(a) applies to not only the imposition of one's initial sentence but also to a sentence imposed upon revocation of supervised release. Nothing in § 3584(a) states or implies that the statute does not extend to revocation proceedings. A district court has full authority under § 3584(a) to sentence a defendant consecutively for violations of supervised release.

*Id.* at 851-52 (citations omitted). "[E]very court of appeals to address the issue has concluded that [§ 3584(a)] applies not just to initial sentencing, but also extends to revocation proceedings. *Id.* at 852. "Because neither § 3583(e) nor § 3624(e) limit § 3584(a), the District Court had full discretion to sentence Dees according to this latter statute." *Id.* We have repeatedly, but implicitly, rejected Morris' argument while numerous other circuits have expressly rejected it. Morris provides no authority supporting his position. This argument is frivolous.

*2. Substantive Review*

Even before the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), the imposition and revocation of supervised release under the guidelines' policy statements "has always been left to the discretion of the court." *Cordova*, 461 F.3d at 1188. "A sentence in excess of the Chapter 7 range is not a 'departure' from a binding guideline." *United States v. Burdex*, 100 F.3d 882, 885 (10th Cir. 1996). "[O]nly the

statutory maximum imposed by Congress binds a sentencing court as to the length of a sentence imposed upon a violation of supervised release." *Id.*

The court's decision to impose a higher sentence than that recommended by the guidelines does not necessarily make it "unfair." Our review is not for what the defendant might consider fair, but for reasonable decision making. *See Cordova*, 461 F.3d at 1188 ("[I]t is now axiomatic that a sentence in excess of that recommended by the Chapter 7 policy statements will be upheld if it can be determined from the record to have been reasoned and reasonable.") (quotations omitted).

Post-*Gall*, we consider in all cases whether the length of the chosen sentence is substantively reasonable under an abuse of discretion standard. *Gall*, 128 S.Ct. at 597. When the sentence imposed is higher or lower than what the guidelines recommend, our "analysis hinges on the method by which the district court selects the particular sentence." *Alapizco-Valenzuela*, 546 F.3d at 1215. Morris argues the court's sentence unfairly imposed a sentence higher than recommended by the guidelines on Count One and, because each count is to run consecutively, his sentence is nearly the same as his sentence on his original conviction.

The judge appropriately considered the guideline range and the § 3553(a)

factors. It noted Morris' pattern of violations[16] and the serious nature of those violations. The hearing transcript clearly supports his decision.

Facing revocation for the seventh time, Morris continued his past practice

---

[16] We reviewed Morris' pattern of violations through 2002 in *United States v. Morris*, 42 Fed. Appx. 285 *1-2 (10th Cir. 2002) (unpublished):

On January 4, 1993, [Morris] was sentenced to thirty months in prison followed by three years supervised release. Morris was initially released from prison in March 1995, and has since had a long and persistent history of violating the terms and conditions of his supervised release.

Morris' supervised release was first revoked in August 1997, whereupon he was sentenced to six months in prison followed by a new thirty month term of supervised release ("Aug. 1997 Judgment"). Morris was released from prison in March 1998, but his supervised release was revoked again in August 1998. This time he was sentenced to six months in prison followed by a new eighteen month term of supervised release ("Aug. 1998 Judgment"). Morris served approximately one month in prison before he was released on bond pending an appeal of the Aug. 1998 Judgment. Although we affirmed the Aug. 1998 Judgment in March 1999, *see United States v. Morris*, No. 97-5188, 1999 WL 140137 (10th Cir. Mar. 18, 1999), the district court thereafter vacated the judgment, at Morris' request, purporting to reinstate the Aug. 1997 Judgment. As a result, Morris never completed the six month prison term and remained on release. [The conditions of Morris' supervised release were modified twice before this, on August 3, 1995, and November 25, 1996, respectively, based on two separate findings that Morris violated the release conditions.]

In December 1999, the district court revoked Morris' supervised release yet again, based on a state conviction for misdemeanor assault and battery . . . .

In November 2000, Morris' supervised release was revoked for a fourth and, to this point, final time. In response to the government's petition for revocation, Morris filed a stipulation admitting that from March 2000 until October 2000 "he worked for the family business," and that he "failed to advise his probation officer of the fact that he was so employed," in violation of the December 1999 employment restrictions.

-24-

of admitting wrongdoing only in the face of compelling evidence precluding any alternative. And then he rationalized and minimized his transgressions. His plea for leniency was, at bottom, merely a promise that this time he would do everything asked of him. A hollow and brittle promise in light of years of failing to do anything he found to be inconvenient. This case calls to mind the old adage – fool me once shame on you, fool me twice shame on me. The judge, nobody's fool, considered all the evidence. His conclusion that "a lengthy term of imprisonment is not only justified, but necessary" is unquestionably reasonable. (R. Supp. Appx. at 46-47.) Morris' contrary arguments are frivolous.

## C. Ineffective Assistance of Counsel

Morris argues his counsel was ineffective for failing to present mitigating evidence at the hearing and for failing to file a substantive brief on the issues he has raised. We very rarely review claims for ineffective assistance of counsel on direct appeal. *See, e.g., United States v. Galloway*, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc) ("Ineffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. Such claims brought on direct appeal are presumptively dismissible, and virtually all will be dismissed."). If Morris wishes to do so, he may pursue such claims in collateral proceedings.[17]

---

[17] We note, however, if an omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance." *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006). We have addressed and rejected each argument Morris claims his attorney failed to pursue.

After thorough review of the record we agree with Morris' counsel; there are no meritorious issues. We have carefully considered the potential issues raised by Morris and concluded each was frivolous. *See Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (A claim is frivolous only "if it lacks an arguable basis either in law or in fact.") Since no non-frivolous issues have been advanced for our consideration we **DISMISS** this appeal. Morris' supplemental "Motion to Strike Anders Brief" is **DENIED**. Counsel is permitted to withdraw.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge